and we will just wait for the courtroom to clear and settle down before we begin with that. Thank you. Thank you. All right, we will start with Mr. Diamond. May it please the court, opposing counsel. Your honors, this is an appeal from the award of summary judgment in favor of the defendants denying Ms. Barr's claims for a violation of her 14th Amendment rights for the unlawful seizure of her property without due process. On August 26th, October 17th and October 31st, Ms. Barr's barbershops were seized by the city of Centerpointe, its agents and officials without affording her with notice or an opportunity to be heard. At the trial court level, the court found that Ms. Barr was not deprived of her procedural due process rights because she failed to argue that her post deprivation state court remedies were inadequate. And in doing so, the court applied the McKinney rule. And so the issue that we've raised before the court is whether the trial court correctly applied the McKinney rule in this case. As the court is well aware, the McKinney rule is founded on the Per Hudson Doctrine. And the Per Hudson Doctrine stands for the premise that pre-deprivation due process is not required when there is a need for quick state action or that the seizure was the result of an unauthorized or random act. And that is not what we have in this case. You know, McKinney has some very broad language in it that I think many courts maybe have misinterpreted over the years since we decided that case and since Judge Joflat wrote it. But there's nothing in McKinney really that says you're not entitled to pre-deprivation due process, is there? No, there's not. In fact, in McKinney, the aggrieved plaintiff was given pre-deprivation due process. And although the defendants argue in this case that Ms. Barr was given pre-deprivation process, that's factually inaccurate. The only occasion she had to appear before the city council to discuss the operation of her business was on October 9th. Notably, this is after the August 26th seizure. But let me ask you something. Even if there had been some type of pre-deprivation process, the district court decided this on the basis of – did not even address that issue, right? The district court just said, under McKinney, we're done. True. So, if we thought there were an error with respect to that, would it be appropriate for us to send it back to the district court to determine whether pre-deprivation process was provided and whether those procedures were sufficient? That is, in fact, what we're asking. The issue was not raised by the defendants. And they moved for summary judgment, obviously. And the plaintiff responded. And they never raised the issue of whether the deprivation of the seizure of her property was constitutionally adequate. The process was constitutionally adequate. And that was the issue that was raised by the plaintiff in its response. And the court, for the first time, makes the argument on behalf of the defendants saying that, well, McKinney rule would apply anyway. And so, therefore, you have failed to state a claim. And, therefore, we're dismissing her count, her claims. Talk to us about Zinnerman. It seems to me the Zinnerman case out of the Supreme Court is a controlling case that should be followed here. That is our argument. Again, the plaintiff brought the 39E motion to the court. We point out that the Zinnerman v. Birch is the distinguishing case that struck the difference between Parrott and Hudson. And it says that that rule, the adequacy of the post-deprivation state court remedies, is limited when there's a need for the quick state action. Or it was pursuant to where it was never designed to reach a situation where the deprivation was pursuant to an established state procedure. And that's what we have here. You have the property being seized pursuant to the established practice of the city as agents and officials to put chains and locks on a business who they think is operating without a business license. This was not a random and unauthorized act where the state was not in a position or the city was not positioned to predict when a seizure would occur. And the city was in a position to control the acts of its agents and officials. And they could have provided her with pre-deprivation process and it could have prevented the seizure from occurring. And so they weren't positioned to provide pre-deprivation process, but they did not. And that's why there was the violation. If there are no more questions, I'll reserve my time. Thank you, Mr. Donahue. And you've reserved six minutes for rebuttal. Mr. Kinney. Good morning, Your Honors. My name is Warren Kinney and I'm here to represent the City of Centerpoint, Mayor Tom Henderson and John Watkins. I'd like to provide a little bit more factual background than I think that Mr. Diamond did. We don't dispute that her businesses were locked on August the 26th of 2014. The city was contacted by the Jefferson County Barber Commission, who was also a named defendant. And they informed the city that she had had her barbering licenses revoked. And we were cooperating with them. Was she given notice of that? She was. How? The barber commission provided her with a notice, told her to come meet with them on the 26th that morning. She requested to have counsel and have it postponed. And when she was walking out, someone from the barber commission told her, okay, but we're going to send the sheriff to shut you down. But how much notice did she get before that hearing? I don't think it was very much. But the city was not involved in providing her with that notice before the hearing. See, under the Alabama Code, forget federal law, let's talk about state law just a minute. Under the Alabama Code, section 453740.04D, that statute provides written notice must be given at least 20 days prior to a hearing. And then a hearing is supposed to be held. That wasn't done in this case, was it? And I'm not No, was that done or not done in this case? I don't believe so. I don't believe so. With regard to her barbering licenses? No, sir. Why isn't that a problem? Well, because the city did that at the behest of the Jefferson County Barber Commission. But the Jefferson County Barber Commission doesn't have the power to decide not to comply with constitutional rights and notice under state law, does it? I don't believe so, no, Your Honor. So why isn't that a problem then? It is potentially a problem. But, of course, McKinney could fix it. I mean, McKinney's Well, here's the problem I have with McKinney fixing it. It seems to me, and I understand McKinney to say, look, if there's an emergency situation, if it's not practical to give prior notice, then we're willing to dispense with a notice and pre-deprivation procedures in those kinds of circumstances. Why would we not just send this back to the district court to determine whether the defendants put on any evidence that suggests that either there was an emergency or it wasn't practical to comply? I mean, why would we not do that? It's certainly a possibility and it's something that I've comprehended. I don't think that it's necessary in this instance. Trina Paulding, a representative of the Barber Commission, she testified that having these people who are unlicensed cutting hair is a health hazard. And I think that that is a hazard and a potential problem for the public and both the commission and So you want us to make the factual finding then? I would point out, Your Honor, that you can affirm the district court's judgment for any reason that's in the record. But in order to do that, would we not have to evaluate the credibility of the witness? I mean, wouldn't we have to essentially make a factual finding? It's in the record. It's undisputed. Would we have to make a factual finding? On whether or not allowing them to continue to It was an emergency. It was an emergency to shut them down, a health emergency. I don't think that you would need to make that finding. Well, let me ask you the question then. Is there something in the record you pinpoint to where that factual finding has been made? I mean, it seems to me either the factual finding of that nature is in the record or we have to make that factual finding. Or maybe I'm missing something and you can tell me that might be the case too. Ms. Pauling's deposition is in the record and she testified to that. As far as I know, that has not been disputed. But just to be clear, the court did not make such a factual finding that there were emergency requirements because there would be a health hazard if the place were not shut down without pre- That's correct, Your Honor. She did not specifically find that there was an emergency situation occurring at this particular time. But I'd also like to Well, first of all, as Judge Dabena pointed out earlier, McKinney's got some very broad language, broad enough that it says that only when the state would refuse to provide a remedy for a procedural infirmity, a procedural deprivation, does a constitutional action under 1983 arise. But McKinney doesn't say that you're never entitled to plea deprivation due process, does it? No, Judge, it does not say that. The problem I have here is you go out and you shut this business down, put chains up and locks on the doors, and then she's got to go seek post-deprivation rights when you very easily could have given a plea deprivation due process. I just don't see where there's that much of a problem for the city to do that. In fact, state law requires it because you revoked her license. Well, I would say, Judge, that the Barber Commission revoked her license to practice barbering. And so we didn't think it appropriate for her to continue to do so within the city's limits after they had revoked her licenses to operate that way. However... Let me ask you something. If she had continued to do so after having her license revoked, were there other options that the state had to pursue against her? For example, were there administrative sanctions or possibly criminal violations? Those very well may be possibilities. I haven't explored all the other options that they could have used. But I also would not think it would be appropriate for them to continue to allow someone to practice something that they weren't licensed to do so. And so they were trying to fix that. Of course, it wasn't but maybe 10 days later that she got things straightened out with the Barber Commission and she opened back up. Right, but 10 days without business is a long time. I mean, you know, you've got to pay the rent. 10 days is, I mean, a third of the month. If the regulatory agency has revoked your ability to engage in that profession, I think it's problematic to allow it to continue to do so. Sometimes a regulatory agency can make a mistake which is why we have free deprivation process. Certainly they can. And she met with them and they did what they did. But there's also, that's also the reason why we have post deprivation remedies. 10 days later, they opened back up. She got it straightened out. During this process, it became apparent that there were some discrepancies with regard to her revenue statements that she had been providing to the city. So they gave her about a month and a half's notice before they ever revoked her business license based on the city, the city's procedures, the city's reasons. But how does that, that doesn't make up for, if there was a pre-deprivation violation the first two times or the first time even that her shops were chained shut, you would agree that the fact that later in time they might have done it right doesn't make up for the pre-deprivation error the first time? Would you, or are you arguing otherwise? No, Your Honor, I'm not arguing otherwise. What I'm arguing is that there are sort of three separate incidences in which her business was closed. And the first time was as a result of the actions of the Jefferson County Barber Commission, who is a named defendant and who's been dismissed, and who the plaintiff elected not to pursue an appeal against. The second times were at the behest of the city where she had more than ample notice and more than ample opportunity to respond. In fact, her attorney was present with her. But if we're just isolating, you know, the questions being asked of me right now today about the 26th, you know, that was on the Barber Commission. But she didn't meet with them. She had an opportunity to work things out and she asked for more time so she could bring her attorney. But that was pursuant to them, who is not a named defendant. And to the degree that there is an infirmity or a failure to comply with state law, she had mechanisms whereby she could seek a post-deprivation remedy through state courts a number of different ways. But she didn't do that. Instead, she filed a lawsuit two years later. And so now we're trying to go piece things back together from that point and see what happened. So I think that the district court got it right when it applied McKinney. First of all, pre-deprivation, I think it's in the Matthews v. Eldridge case where it's first elaborated on the requirements of pre-deprivation due process being a necessity when property is finally deprived of an individual. In this instance, it was never finally deprived of her. She opened back up about a week later. When the city came and had a hearing... But surely you're not arguing that it would be okay for the city to just come and randomly chain shut a business for two weeks and then say, okay, now we're going to leave it open and now we're going to chain it shut again for a couple weeks. Now we're going to leave it open. Now we're going to chain it shut again for a couple weeks as long as they don't ultimately deprive a person of their property. That's not your argument, is it? That's not my argument, Your Honor. They did it here because the Jefferson County Barber Commission revoked her license to practice in the profession in which she was at the locations where she was. That's why they did it on the 26th. Did the district court ever even discuss the Zinnerman case out of the Supreme Court? I'm not aware, Your Honor. I don't believe so. Because it seems to me that's really the controlling case here and if you apply that case to what happened here, it seems to me she was clearly entitled to pre-deprivation due process. I can't say otherwise, Your Honor. But what I can say is that she hasn't stated a claim for a violation of her due process rights based on McKinney and his progeny because she had post-deprivation remedies available to her. She didn't elect to pursue those, but they were there. And in Cotton v. Jackson, the plaintiff in that case specifically asked for a hearing, was told, we're not going to give you one, but you can seek review from a board, an administrative board, after the fact. And in that case, the 11th Circuit held that the petitioner, the plaintiff, had not stated a claim for a constitutional violation pursuant to 1983 because the petitioner plaintiff had a remedial process available to him to fix any deprivation that may have occurred on the front end of things. And that's what we have here. She was never... You seem to be arguing now that McKinney holds that you're never entitled to pre-deprivation process. I don't think that McKinney says that you're never entitled to pre-deprivation due process. What McKinney says is that you have not stated a claim pursuant to 1983 for a 14th Amendment procedural due process violation unless you can demonstrate and articulate that post-deprivation due process cannot cure the deficiency. And here it could have. She could have filed a temporary restraining order in circuit court. She could have complied with the requests being asked of her. The city was more than willing to cooperate, but at least with regard to the 26th, when she had her filing licenses... Could she sue for damages for the number of days she had her closed down? I don't believe that the damages are alleged in such a narrowly tailored fashion, Your Honor. Whether they're alleged or not, though, could she sue for that? For damages? I think she could sue for damages if she could demonstrate that the deprivation, the violation of her property interest was wrongful. But she hasn't done that. You know, as best I can tell, were there to be a procedural due process violation, which we claim she has not stated under McKinney and its progeny, then her... And she cannot demonstrate that it was wrongful after the fact. Her damages would be listed or limited to nominal in nature. Thank you. Thank you. Mr. Diamond. Yes, Your Honor. I think this is a court opposing counsel. Just factually, the defense never argued Ms. Barr posed a risk to the public health, safety, and welfare by continuing to operate her business. And that is a factual question that the court never reached, as Your Honor alluded to. But the two salient facts that weigh in the plaintiff's favor on this issue is that she received a citation on August 19th of 2014 from Inspector Paulding who observed a student barber who had a work permit that required supervision, was in her shop with some friends. She's not called before the commission to address this issue, the barber commission, until some seven days later, August 26th. So if that was really an immediate hazard to our public's health and safety, they could have taken action much quicker. Let me ask you a question, if you don't mind. I am understanding Mr. Kennedy be saying that the first shutdown is not at issue here. I disagree. Thank you, Your Honor. And I don't believe that, it's a factually inaccurate argument. So, while the city says that they didn't lock out their doors on the 26th, they clearly, they did. And that's in the testimony throughout the record and it's clearly stated by one of the inspectors, John Watkins, in his deposition, which is tab 63-5. He says, the city placed chains and locks on bar's business doors on August 26th because she was operating without a business license. And their department head, their supervisor, Wayne Plunkett, put the chains and locks on her doors. To address your question earlier, Your Honor, you said, does the barber commission have the authority to seize someone's property? Clearly, they don't. And the authority that they have is these inspectors for the barber commission, they are deputized. They have arrest powers. And if they saw somebody who was violating the rules and regulations of the barber commission, they are authorized under the law to arrest that person and bring them into custody. And to say that the barber commission shut them down on the 26th, it's just a factually inaccurate statement. And potentially, it could be one for the court to resolve because obviously, there are facts that weigh in the plaintiff's favor on that issue. So, she could have, when the businesses were locked any of these three times, she could have filed an action in state court. She could have sought an injunction. Clearly, she could have sought an injunction, but that is not a constitutionally adequate process because to put the onus on the property owner, firstly, if that is the state's procedure, they have an obligation to tell her that's the procedure, which they didn't. And secondly, it's unfair to put the onus on the business owner who had their property seized by the state without having been given an opportunity to address the propriety of their conduct to prevent the wrongful taking in the first instance. And the court even addressed this, and I wish we could have put it in our brief, but it was a month after our briefs were submitted to this court, on October of 2018, the court resolved Galbraith v. Hale County, where the individual was deprived of pre-deprivation termination notice in a hearing. And the court said, McKinney doesn't apply. That you have to have the pre-deprivation due process despite your post-deprivation remedies that are available to you. And so that issue's already been resolved. Thank you. I reserve labor time. Thank you very much. All righty. That brings us to the last case of today, and that is Perry v. Alabama, an alcoholic beverage.